IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 31, 2011 Session

## RALPH KENNETH FREEMAN, v. CITY OF CHATTANOOGA

**Appeal from the Chancery Court for Hamilton County**
**No. 09-0927     Hon. W. Frank Brown, III., Chancellor**

**No. E2010-01286-COA-R3-CV - Filed March 31, 2011**

The Chattanooga City Police Department terminated petitioner for violation of policies, and the City Council upheld petitioner's termination. Petitioner filed a writ of certiorari in Chancery Court and the Chancellor upheld petitioner's termination. On appeal, we affirm the Judgment of the Chancery Court.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Ralph Freeman, Chattanooga, Tennessee, *pro se.*

Crystal R. Freiberg and Patrick P.H. Bobo, Chattanooga, Tennessee, for the appellee, City of Chattanooga.

### OPINION

Petitioner, Ralph Kenneth Freeman, filed a Petition for Writ of Certiorari and Judicial Review, of the decision of the Chattanooga City Council on October 19, 2009, affirming his termination from the Chattanooga City Police Department. He alleged that he was terminated for various infractions, including consuming alcohol while carrying a firearm, but that other officers, who were Caucasian, were allowed to get away with similar infractions without being terminated, and thus his punishment was disproportionate to his offense.

The City filed a Transcript of the hearing before the City Council and exhibits, and filed an Answer stating that petitioner's termination from employment was upheld by a panel of five members of the Chattanooga City Council. The City admitted that petitioner was terminated based on allegations of Consuming Alcohol While Armed, Unauthorized Off-Duty Firearm, Fraud, and Untruthfulness (Conduct Unbecoming). The City asserted the allegations regarding conduct of other officers were irrelevant and dissimilar, and that petitioner's termination was not in violation of constitutional or statutory provisions , and was supported by the evidence.

Petitioner then filed a Motion asking the Court to consider additional evidence, seeking to introduce the same factual allegations regarding the alleged misconduct of white officers, and also filed a Motion for Summary Judgment, arguing the panel acted arbitrarily and capriciously. Petitioner included an excerpt from the hearing transcript, wherein his attorney attempted to cross-examine the police chief about other officers' infractions, but an objection to this line of questioning was sustained. Petitioner also included a transcript excerpt wherein the panel chairman "exhibited preconceived bias" against petitioner by referring to another incident that had occurred prior to the incidents in question.

The City filed a Response to the Motion to Consider Additional Evidence, and stated the Court could only consider additional evidence if the panel exceeded its jurisdiction or acted illegally, arbitrarily, or capriciously.

Subsequently, the Court entered a Memorandum Opinion and Order, and stated that additional factual evidence could not be heard on appeal, and that the Court was required to make a decision based on the record developed before the City Council. The Court stated that if additional evidence was appropriate, the case would be remanded back to the Council to hear that evidence, as the Council was the fact finder and decision maker, and relied upon the case of *Massey v. Shelby County Ret. Bd.*, 813 S.W.2d 462 (Tenn. Ct. App. 1991). The Court stated that because petitioner was not arguing that there was an irregularity in procedure, but rather that his case should have been decided differently because different results were reached in other employees' cases, the Court could not consider new evidence, as the only issue was whether there was substantial and material evidence to uphold the Council's decision. The Motion for Summary Judgment was also denied.

The Court found that petitioner was terminated based upon the charges of consuming alcohol while armed, unauthorized off-duty firearm, fraud and untruthfulness (conduct unbecoming). The Court stated that petitioner's termination was reviewed by a panel of five members of the City Council, and that seven witnesses testified and 15 exhibits were introduced. The Trial Court reviewed the witnesses' testimony and the evidentiary transcript,

and noted that the Council voted unanimously to uphold petitioner's termination. The Court found that there was substantial and material evidence to support the Council's decision, and the Court noted that, while petitioner had been a good officer, there had been more than one incident in his file resulting in punishment, and that punishment was progressive (specifically noting the Wal-Mart incident and the 28 day suspension that followed). The Court found that it would be impossible to look at one incident, as petitioner was trying to do with the other officers, and say he should not be fired because they weren't fired. The Court found the Council did not follow illegal or improper procedure, and denied petitioner relief.

On appeal petitioner's issues are:

I.      Whether the Trial Court erred in denying relief to petitioner?

II.     Whether the Trial Court erred in refusing to consider additional evidence?

Pursuant to Tenn. Code Ann. §27-9-114 and §4-5-322, the standard of review in this case is as follows:

(h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.

(B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Tenn. Code Ann. §4-5-322.

Petitioner argues the Trial Court erred in failing to consider the additional evidence he wanted to present regarding the alleged disparity between the punishment he received and the punishment given to white officers who had committed "similar" or "worse" offenses. As the statute provides, "review shall be conducted by the court without a jury and shall be confined to the record. In cases of alleged irregularities in procedure before the agency, not shown in the record, proof thereon may be taken in the court." Tenn. Code Ann. §4-5-322(g). As the Trial Court found, however, petitioner did not show or allege any procedural irregularities by the panel, and thus the Court properly confined its review to the administrative record.

As noted by the Trial Court, this question was addressed in depth by this Court in *Massey v. Shelby County Retirement Bd.*, 813 S.W.2d 462 (Tenn. Ct. App. 1991). In that case, the plaintiff sought to present "additional evidence" consisting of personnel and medical records of other employees of the Shelby County Sheriff's Department, as well as minutes of certain meetings of the Board. *Id.* Plaintiff contended that the "additional evidence" would show that under the same or similar circumstances the Board treated some employees differently than it treated plaintiff, and that this evidence would show that the Board acted "fraudulently, illegally, or arbitrarily." *Id.*

The Trial Court refused to hear this evidence, however, and this Court affirmed that decision. *Id.* This Court explained:

In declining to entertain such evidence, the chancellor noted that "arbitrary, illegal, and/or capricious" refers to the Board's handling of the specific case before it, not how the Board handled this case as compared to some other case. He noted that under the common-law writ the court is to review the legality of the lower proceeding, and that the matter of arbitrariness or capriciousness must be shown in the record. We concur with the chancellor's ruling. What plaintiff, in essence, was trying to establish by the "additional evidence" goes to the sufficiency of the evidence. That is, plaintiff was attempting to establish that in other cases with the same or similar evidence the Board found the plaintiff to be disabled.

Whether or not there is any material evidence to support the action of the agency is a question of law to be decided by the reviewing court upon an examination of the evidence introduced before the agency.

In his article entitled "Review of Administrative Decisions by Writ of Certiorari in Tennessee," Judge Ben Cantrell, presently a member of the Middle Section of this

Court, then Chancellor Cantrell, had this to say on this subject:

> In determining the question of whether new evidence may be introduced before the reviewing court in a proceeding under the common-law writ, a distinction must be drawn between the different types of legal questions which may be presented.

> Laying aside for the moment the question of sufficiency of evidence to support administrative fact findings, it may be stated generally that new or additional evidence may be received by the reviewing court on the issue of whether the lower tribunal exceeded its jurisdiction or in some manner acted illegally, arbitrarily, or capriciously. The petition might allege, for example, that the lower tribunal's action was based upon some ulterior motive. Obviously new evidence may be introduced on such an issue which goes to the legality of the lower tribunal's action, because the reviewing court determines such issues as an original matter. On such an issue the reviewing court weighs the evidence before it and determines by preponderance of the proof whether the lower tribunal acted illegally or not.

> The situation is different, however, where the legal issue before the court is the sufficiency of the evidence to support an administrative fact-finding. On this issue no new evidence is admissible. The reviewing court is confined to the record as it existed before the lower fact-finding tribunal.

> Moreover, in reviewing this evidence the court does not engage in a reweighing of the evidence to determine whether the fact conclusion of the lower tribunal was right or not. The function of the reviewing court is limited to asking whether there was in the record before the fact-finding body any evidence of a material or substantial nature from which that body could have, by reasoning from that evidence, arrived at the conclusion of fact which is being reviewed. If there is such evidence in the lower record, the court must affirm the lower tribunal's fact-finding. To justify vacating a fact-finding there must be no evidence from which the lower body's finding could have been reached by reasoning from the evidence. If there was no such evidence, then the fact-finding is illegal, arbitrary, and capricious, and it is the duty of the reviewing court to vacate that finding.

B. Cantrell, Review of Administrative Decisions by Writ of Certiorari in Tennessee, 4 Mem.St.U.L.Rev. 19, 29-30 (1973) (emphasis in the original).

*Id*. at 465 (citations omitted).

As the Trial Court observed, petitioner is not arguing any irregularity in procedure by the Council. Rather, he is arguing that he should have been treated differently based on the treatment given other employees. While petitioner attempts to make the argument that the Council somehow violated its own policy in the conduct of the hearing (apparently because the Chair sustained opposing counsel's objection to the questions regarding other officers), petitioner has not actually shown an irregularity in the conduct of the hearing. As such, the real issue is whether there is substantial and material evidence in the record to uphold the Council's decision.

A review of the evidence shows that the Council's decision was clearly supported by substantial and material evidence. Captain Mathis testified that petitioner admitted to the consumption of alcohol while carrying a personal firearm, and further that petitioner submitted a fraudulent time record to Chattanooga Boiler Tank ("CBT") and , showing that he worked from 1:00 to 5:00 on July 18, when he was on-duty and being questioned by IAD during that time frame. Ms. Green, the representative from CBT, testified that they hired officers to work during the middle of the day on weekends, because that was when they typically had break-ins. This evidence from Green and from Lt. Hogg was to the fact that the hours were daytime only.

Chief Cooper testified that petitioner did drink alcohol while carrying a weapon, which is a violation of the Department's policy, and that petitioner was also carrying an unauthorized off-duty weapon, which is another policy violation. The Chief testified that petitioner admitted to both of these violations, but stated that he just had a "sip" of alcohol, and that he thought his off-duty weapon was okay because he had a carry permit.

Chief Cooper testified that petitioner also turned in a timesheet and was paid by CBT for working from 1:00 to 5:00 on July 18, and that petitioner told him it was in the a.m. hours, but told internal affairs that he went home and went to bed on that day. Chief Cooper testified that he called Ms. Green during the initial disciplinary hearing and asked her if they had ever allowed anyone to work during the middle of the night, and she said they had not. Cooper testified that petitioner was asked why he told IAD that he went home and went to bed, and he stated that he didn't want to admit that he went to an extra job after he had been drinking. Chief Cooper testified that it was clear to him that petitioner was untruthful with him or IAD or both, and that petitioner had turned in a fraudulent timesheet to CBT.

Cooper testified that when making a determination of the proper discipline to be given, he consulted with the IAD commander and investigator, his deputy chief and all three assistant chiefs, and also a commanding officer from the employee's department. Cooper

testified that they looked at the officer's entire career, and what had been done in the past and the discipline assessed, in order to make the discipline progressive. Cooper testified that after the Wal-Mart incident, everyone else thought petitioner should have been terminated, but he did not do so. He stated that petitioner was a good officer but had trouble handling himself off-duty.

Cooper testified that he felt he had to terminate petitioner after these incidents because he had crossed the line and had become a liability for the department, and that he didn't think petitioner's issues could be dealt with via retraining, especially when he knew that petitioner had lied.

A review of the transcript demonstrates that there was substantial and material evidence to support the Council's decision. Petitioner admitted to violating the policies of consuming alcohol while armed, admitted that he was carrying a personal weapon, and admitted that he lied to IAD. As such, the charges of policy violations were properly brought and sustained. Regarding his punishment, this was not the first serious violation of policy by petitioner. Petitioner was given a 28-day suspension just a few months prior after shoving a 71-year old Wal-Mart greeter to the ground, and the investigation file from that incident shows that petitioner seemed less than truthful about the events of that day as well. That incident drew significant media attention to the department, and yet Chief Cooper gave petitioner "the benefit of the doubt" and did not terminate him after that incident, but rather suspended him and sent him for retraining and anger management counseling.

Thus the Council had ample evidence to find petitioner's termination was proper. There is nothing in the record or in petitioner's filings to show that the Council violated policy or conducted the hearing in an arbitrary or capricious manner.

Petitioner's argument, in its most basic form, is that he was treated differently by CPD, Chief Cooper, and/or the Council because he is black. However, it is not this Court's duty to weigh the evidence or to substitute its judgment for that of the Council. Rather, if there is "any evidence of a material or substantial nature from which that body could have, by reasoning from that evidence, arrived at the conclusion of fact which is being reviewed . . . the court must affirm the lower tribunal's fact-finding." *See Massey*. The record clearly establishes there is substantial evidence to justify petitioner's termination as a police officer, and we affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to Ralph Kenneth Freeman.

_____

HERSCHEL PICKENS FRANKS, P.J.